UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| GRANUTECH-SATURN SYSTEMS CORPORATION OF AMERICA, §<br>§<br>Plaintiff, §<br>§<br>v. §<br>§<br>WAYNE TRAIL TECHNOLOGIES, INC. et al., §<br>§<br>Defendants. § | CIVIL ACTION No. 3:09-cv-529-M |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Wayne Trail Technologies, Inc.'s Motion to Dismiss [Docket Entry #3]. For the reasons below, the Motion is **DENIED**.

*Background*

Plaintiff Granutech-Saturn Systems Corporation of America ("Granutech"), a Texas corporation, designs, manufactures, and sells machines that grind used tires into easily recyclable rubber components. Granutech contracts the manufacture of one of its machines, the "High Output Powderizer," to Wayne Trail Technologies, Inc., a corporation incorporated in Ohio. Subject to a confidentiality agreement, Granutech shared the Powderizer's technical specifications with Wayne Trail, and Wayne Trail shipped completed Powderizers to Granutech, in Texas. Tires into Recycled Energy & Supplies, Inc. ("TIRES"), which the Complaint alleges is incorporated in North Carolina, purchased four Powderizers from Granutech, at a price of $70,000 per unit. Granutech claims that Wayne Trail, without Granutech's knowledge, produced at least ten counterfeit Powderizers at the request of Defendant David Forrester, the president of TIRES, and sold them directly to TIRES, thereby cutting Granutech out of the loop. Granutech

1

claims that Wayne Trail unlawfully used Granutech's confidential information to make the counterfeit Powderizers.

On February 10, 2009, Granutech brought suit against Wayne Trail, TIRES, and David Forrester in the 101st Judicial District Court, Dallas County, Texas, for a conspiracy involving trade secret misappropriation and unfair competition. On March 20, 2009, Defendants removed the suit to this Court, and on March 23, 2009, Wayne Trail moved to dismiss the claims, claiming that this Court lacks personal jurisdiction over it. On May 21, 2009, Granutech filed a First Amended Complaint, adding a claim for breach of the confidentiality agreement and other claims against other Defendants not involved in the current Motion.[1] Wayne Trail requested, that in lieu of re-briefing, that the Court rule on its initial Motion seeking to dismiss it for lack of personal jurisdiction.

*Legal Standard*

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if the long-arm statute of the forum confers personal jurisdiction over that defendant, and the exercise of such jurisdiction by the forum is consistent with due process.[2] The Texas long-arm statute reaches to the limits of due process, and therefore a court need only determine whether the exercise of personal jurisdiction over the moving defendant is consistent with due process.[3] The due process clause permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise

---

[1] The Amended Complaint added Defendant Tires, Inc., of which Forrester is a director, to the suit. Plaintiff alleges that Tires, Inc. participated in the conspiracy by buying counterfeit Powderizers, as TIRES allegedly did. Tires, Inc.'s involvement is not relevant to this Motion.
[2] *Latshaw v. Johnston,* 167 F.3d 208, 211 (5th Cir. 1999); *Electrosource, Inc. v. Horizon Battery Tech., Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999) (citing *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex. 1990)).
[3] *Guardian Royal Exch. Assur., Ltd. v. English China Clays P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991).

2

of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice."[4]

When personal jurisdiction is challenged without an evidentiary hearing, the party seeking to invoke jurisdiction must make a *prima facie* showing of jurisdiction, with the Court resolving all disputed facts in favor of jurisdiction.[5] When determining whether the plaintiff has made a *prima facie* case, the Court may consider any affidavits, interrogatories, deposition testimony, or any other recognized discovery method,[6] not considering conclusory allegations.[7]

There are two categories of personal jurisdiction, general and specific. General jurisdiction exists when a defendant's contacts with the forum state are "continuous and systematic," allowing the Court to exercise jurisdiction over that defendant for causes of action unrelated to the defendant's connections to the state.[8] For specific jurisdiction to exist, the plaintiff's claim must arise out of or relate to those contacts.[9] If a plaintiff can establish minimum contacts, the burden shifts to the defendant to demonstrate that the exercise of jurisdiction would be unfair.[10]

*Analysis*

Granutech claims that Wayne Trail is subject to both general jurisdiction and specific jurisdiction in Texas, and the Court addresses each in turn. Granutech also moves the Court to allow it to conduct discovery to investigate whether Wayne Trail has sufficient jurisdictional contacts to support the exercise of general jurisdiction.

---

[4] *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001).
[5] *See Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).
[6] *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985).
[7] *Panda Brandywine*, 253 F.3d at 869.
[8] *Mink v. AAAA Dev., LLC,* 190 F.3d 333, 336 (5th Cir. 1999); s*ee also Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n.9 (1984).
[9] *See Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985).
[10] *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999).

I.   General Jurisdiction

In support of its Motion to Dismiss, Wayne Trail submitted the Declaration of Robert Lewinski, its Vice President of Sales and Marketing, who states:

- Wayne Trail is incorporated under the laws of Ohio and has its principal place of business in Ohio.
- Wayne Trail has never maintained a registered agent or place of business in Texas, nor has it ever owned property or held any licenses, charters, or permits in Texas.
- Wayne Trail has never held corporate meetings or maintained corporate records in Texas, has never employed Texas residents, has never owned or leased any office space within Texas, and has never maintained a mailing address or bank account in Texas.
- All the work performed by Wayne Trail for Granutech was done in Ohio.
- Wayne Trail visited Granutech in Texas once in 1995, but the meeting was wholly unrelated to the current dispute and pre-dates the confidentiality agreement between Wayne Trail and Granutech.

Granutech argues that Wayne Trail's contacts with Texas support the exercise of general jurisdiction. Granutech points to the following facts:

- On its website, Wayne Trail holds itself out as "an entity that provides high precision machining jigs and fixtures for critical jet engine ground support operations around the world."
- For over seven years, Wayne Trail delivered Powderizers, and sent invoices for them, to Granutech in Texas.
- Wayne Trail signed a confidentiality agreement with Granutech, evidencing Wayne Trail knew that Granutech valued its designs, drawings, and specifications, and considered them confidential trade secrets. The agreement references Granutech's address in Grand Prairie, Texas.

Granutech argues that these facts constitute "continuing and systematic contacts with Texas." For an exercise of general jurisdiction to be appropriate, the defendant's contacts with the forum must be "continuous and systematic."[11] In *Helicopteros Nacionales de Columbia v. Hall*,[12] a Peruvian defendant was sued in Texas, for injuries arising out of a helicopter accident in Peru. The defendant's chief executive officer had traveled to Texas to negotiate the

---

[11] *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952).
[12] 466 U.S. 408, 414-17 (1984).

transportation contract for use of the helicopter in Peru, the defendant had purchased helicopters, equipment, and training services from a Texas manufacturer, and the defendant had accepted checks from a client based in Texas. The United States Supreme Court rejected the contention that these contacts were continuous and systematic, and held that general jurisdiction was lacking.[13] Similarly, in *Central Freight Lines, Inc. v. APA Transport Corp.*,[14] the Fifth Circuit rejected the plaintiff's general jurisdiction theory, although the defendant, a commercial freight delivery company, apparently regularly sent salespeople to Texas to develop business, negotiate contracts, and service national accounts, but did not operate trucks or pick up or deliver freight in Texas.[15] In this case, Plaintiff has not identified "continuous and systematic" contacts to support a finding of general jurisdiction.

In support of its request for limited discovery on the jurisdictional issue, Granutech cites the Fifth Circuit case of *Williamson v. Tucker*[16] for the proposition that "the district court must give the plaintiff an opportunity for discovery and for a hearing that is appropriate to the nature of the motion to dismiss."[17] Granutech's reliance on *Williamson* is misplaced. *Williamson* did not address a motion for discovery on contacts with the forum state for the purpose of establishing personal jurisdiction. Rather, *Williamson* dealt with *subject* matter jurisdiction.[18] In this Circuit, when seeking discovery to establish personal jurisdiction, a plaintiff must first make a "preliminary showing of jurisdiction."[19]

Granutech has not made such a preliminary showing that Wayne Trail is subject to general jurisdiction in Texas. The uncontroverted evidence shows that Wayne Trail lacks any

---

[13] *Id*. at 420-21.
[14] 322 F.3d 376 (5th Cir. 2003).
[15] *Id.* at 381.
[16] 645 F.2d 404 (5th Cir. 1981).
[17] *Id*. at 414.
[18] *Id*.
[19] *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005).

physical or continuous presence in Texas, and Plaintiff's suspicions of Wayne Trail's activity here are not sufficient to overcome the evidence that Wayne Trail does not have sufficient activities in Texas to support a finding of general jurisdiction.

II.     Specific Jurisdiction

Specific jurisdiction over the claims asserted is another matter entirely.  Granutech bases its argument that this Court has specific jurisdiction over Wayne Trail on the fact that the harmful effects of Wayne Trail's alleged tortious activity were felt in Texas, and are sufficient to support jurisdiction under the "effects test."

Under the "effects test," first formulated in the United States Supreme Court case of *Calder v. Jones*,[20] "an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct."[21]  In *Calder*, the plaintiff, a California actress, accused a newspaper writer and editor of libeling her in a tabloid article published in Florida.  The Court concluded that the defendants knew that its harmful effects would be felt by the plaintiff in California, and therefore concluded they intentionally and expressly aimed their allegedly tortious conduct at the forum state.[22]  The Court stated:

> [P]etitioners are not charged with mere untargeted negligence. Rather, their intentional, and allegedly tortious, actions were expressly aimed at California. Petitioner South wrote and petitioner Calder edited an article that they knew would have a potentially devastating impact upon respondent. And they knew that the brunt of that injury would be felt by respondent in the State in which she lives and works and in which the National Enquirer has its largest circulation. Under the circumstances, petitioners must "reasonably anticipate being haled into court there" to answer for the truth of the statements made in their article. An individual injured in California need not go to Florida to seek redress from persons who,

---

[20] 465 U.S. 783, 789-90 (1984).
[21] *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999) (citing *Calder*, 465 U.S. 783, 789-90 (1984)).
[22] *Calder*, 465 U.S. at 789-90.

though remaining in Florida, knowingly cause the injury in California.[23]

As the Fifth Circuit has frequently written after *Calder*, the mere foreseeability that harm will accrue to someone in the forum is insufficient. The effects of an alleged intentional tort must be addressed as part of the analysis of the defendant's relevant contacts with the forum.[24] Applying these principles in *Central Freight*,[25] the Fifth Circuit found jurisdiction where the plaintiff and the defendant had entered into a contract allowing each other access to the other's freight lines, to expand the geographical reach of both firms. With its newly acquired nationwide market, the plaintiff, a Texas citizen, contracted with Dell Computers, to ship computers from its place of business in Texas to the northeastern United States, using the defendant's lines for part of the trip. Among other claims, plaintiff sued the defendant, a New Jersey citizen, for tortious interference with plaintiff's relationship with Dell. The Fifth Circuit found jurisdiction over the defendant in Texas because Texas was the plaintiff's home state and, as the defendant well knew, the primary location of plaintiff's business relationship with Dell, making it reasonably foreseeable that defendant could be sued in Texas for interference with such a relationship.[26] The Fifth Circuit concluded that "purposeful and affirmative action, the effect of which is to cause business activity (foreseeable by the defendant) in the forum state," establishes the requisite contacts with the forum to support specific jurisdiction.[27]

This case is closely analogous to *Central Freight*. Through its longstanding relationship with a Texas resident, Defendant is alleged to have obtained confidential information from a Texas company, and then to have used the confidential information to make counterfeit versions of that company's products and sell them to that company's customers. Although manufacture

---

[23] *Id.* at 790 (internal citations omitted).
[24] *Panda Brandywine*, 253 F.3d at 869.
[25] 322 F.3d 376.
[26] *Id.* at 383.
[27] *Id.* at 382 n.6.

of the infringing products occurred in Ohio, the Defendant "expressly aimed" its actions at Texas. The alleged theft was from Plaintiff, a Texas company, and the injury was felt by the Plaintiff in Texas.[28] This makes the harm in this case even more localized within the forum state than the harm was in *Calder*, because here, *all* the harm was felt in Texas.[29] It was not merely foreseeable that the injury to the Plaintiff would occur in Texas, but Defendant had *actual knowledge* that its actions would injure a Texas company—Wayne Trail shipped genuine Powderizers into Texas for sale by Granutech, and when Wayne Trail began counterfeiting them, it knew Granutech would lose customers and revenue.[30] The connections between the allegedly tortious activity and Texas cannot be characterized as "random," "fortuitous," or "attenuated"; rather, they are the essence of Plaintiff's claims.[31]

As stated in *Calder*, "Even an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended to or highly likely to follow from the nonresident defendant's conduct."[32] Where trade secrets owned by a forum resident are misappropriated outside the state, and misused in the state, specific personal jurisdiction exists within the forum.[33]

In an effort to resist the exercise of jurisdiction over it, Defendant cites *Michiana Easy Livin' Country, Inc. v. Holten*, an opinion of the Texas Supreme Court. *Michiana* appears to

---

[28] *Id*.

[29] *See id*. (noting that the defendant, by entering into an agreement with a Texas company, "presumably knew" that "many of [the plaintiff's] customers would also come from that state.").

[30] *See id*. at 382 ("Furthermore, by entering into the Interline Agreement, APA knew that it was affiliating itself with an enterprise based primarily in Texas."); *see also Travelers Health Ass'n v. Virginia ex rel. State Corp. Com'n*, 339 U.S. 643, 647, (1950) (upholding personal jurisdiction based on the fact that defendant created "continuing obligations" between himself and a resident of the forum).

[31] *Id*. at 383 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)); Guidry, 188 F.3d at 628.

[32] *Calder*, 465 U.S. 789-90; *Guidry*, 188 F.3d at 628.

[33] *See Alpine Plastics, Inc. v. Erlstedt*, No. Civ.A. 03-1639, 2003 WL 22174288, at *5 (E.D. La. Sep. 17, 2003); *Endotech USA v. Biocompatibles Intl'l PLC*, No. CIV. A. 00-0957, 2000 WL 1594086 (E.D. La. Oct. 24, 2000).

reject the broad application of the "effects" test applied in the Fifth Circuit.[34]  This Court concludes that application of Fifth Circuit law compels the exercise of personal jurisdiction over Wayne Trail in this case.

Having concluded that Wayne Trail has minimum contacts in Texas, the Court requires Wayne Trail to make a "compelling case" that the assertion of jurisdiction over it offends "traditional notions of fair play and substantial justice."[35]  Wayne Trail has not done so. Therefore, Wayne Trail's Motion to Dismiss is **DENIED**.

**SO ORDERED**.

August 12, 2009.

_____
BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
**NORTHERN DISTRICT OF TEXAS**

---

[34] *Compare Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005) *with Central Freight*, 322 F.3d at 376 (applying effects test) *and Guidry*, 188 F.3d at 619 (same).

[35] *See Wien Air Alaska,* 195 F.3d at 215 ("The interests to balance in this determination are the burden on the defendant having to litigate in the forum; the forum state's interests in the lawsuit; the plaintiff's interests in convenient and effective relief; the judicial system's interest in efficient resolution of controversies; and the state's shared interest in furthering fundamental social policies.").